**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
(FORT WORTH DIVISION)**

| | |
|---|---|
| EDWARD BURNETT,<br><br>             Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>             Defendant. | Case No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1.  FCRA, 15 U.S.C. § 1681 *et seq.* |

      Plaintiff Edward Burnett, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## I.    INTRODUCTION

      1.    Plaintiff's Complaint arises from violations of the FCRA, 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Northern District of Texas, Fort Worth Division is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

4. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in Arlington, Texas.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax may be served through its registered agent Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Texas and conducted business in the State of Texas on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

### IV.   FACTUAL BACKGROUND

12. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because

consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17. Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

18. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

20. Defendant regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including it on the consumer reports Defendant sells to third parties such as lenders.

21. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

23. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

24. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

25. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

26. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment

continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

27. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

28. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

29. Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

30. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit, and the credit terms will be worse (e.g., higher interest, lower credit limits).

31. A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

32. Defendant is well aware that the effect of a discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts that are listed in Plaintiff's bankruptcy petition.

33. Defendant is further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

34. Additionally, information indicating that a specific debt has not been discharged, but instead was successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

35. Defendant is also notified of consumer bankruptcies by furnishers of information, and from the information Defendant independently gathers from third parties.

36. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

37. Defendant failed to properly implement a procedure to update unsecured Chapter 13 debt accounts, even though Defendant knows that upon discharge, such debts are treated the same as Chapter 7 debts (discharged with zero balance), as long as the debts were listed in the petition. Defendant also knows that debtors must swear under penalty of perjury that they have listed "all" of their unsecured debts.

38. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

39. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update unsecured pre-bankruptcy Chapter 13 debts as required by § 1681(e)(b).

40. Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by §

1681(e)(b), despite possessing information: inconsistent with the reported information and/or possess/es that establishes the reported information is inaccurate.

41. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42. Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendants regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

43. Further, Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in Defendant's own files.

44. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 13 discharge.

45. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

46. Plaintiff filed a Chapter 13 Bankruptcy on or about January 19, 2018, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 18-01586).

47. Plaintiff complied with all obligations and made all payments during the Chapter 13 Bankruptcy.

48. Accordingly, Plaintiff received an Order of Discharge on or about October 22, 2021. Thereafter, Plaintiff was not personally liable for the unsecured dischargeable debts, and these debts had a zero-dollar balance after the bankruptcy discharge.

49. Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 13 Bankruptcy.

50. In Plaintiff's consumer reports, Defendant included the bankruptcy case number, court, filing date and the fact that Plaintiff's bankruptcy had been discharged.

51. Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

52. Defendant reported Plaintiff's bankruptcy filing and bankruptcy discharge information (date/court/chapter) in the Public Records section and individual tradelines of Plaintiff's consumer reports.

53. Defendant obtained notice of Plaintiff's bankruptcy discharge through its/their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

54. Defendant is aware that CRAs are generally required to report unsecured accounts included in a consumer's Chapter 13 Bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

55. Defendant should have reported **all** of Plaintiff's unsecured dischargeable, pre-petition debt as included in or discharged in Chapter 13 Bankruptcy, and/or with a zero-dollar balance but did not.

56. Rather than accurately report the discharged debts, Defendant inaccurately reported Plaintiff's Acceptance Now Account (the "Account"), starting with 001096************ and opened in March 2016, which predated Plaintiff's bankruptcy filing.

57. The *unsecured* Account was included in Plaintiff's bankruptcy and discharged on or about October 2021. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

58. However, Equifax inaccurately reported the discharged Account with an outstanding balance of $4,089.00, instead of a zero-dollar balance.

59. Equifax did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 13," and/or with zero balances.

60. Notably, the other national CRAs, Experian Information Solutions, Inc., and Trans Union LLC, did not inaccurately report the Accounts like Equifax.

61. Upon information and belief, Acceptance Now furnished information to Defendant that indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

62. Alternatively, upon information and belief, Defendant knew from past experiences that Acceptance Now furnished inaccurate information regarding discharged debts or, has

historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 13 Bankruptcy is discharged.

63. Nevertheless, Defendant blindly relied on the information provided by Acceptance Now even though this information conflicted with or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

64. Defendant's reliance on the furnisher, Acceptance Now, was therefore unreasonable.

65. Defendant inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and they also reported inaccurate account statuses and/or payment histories.

66. Defendant inaccurately reported the Account with a balance owed after the Account was discharged in Chapter 13 Bankruptcy and therefore had a zero-dollar balance.

67. Defendant failed to indicate that the Account had a zero-dollar balance and/or was included/discharged in Chapter 13 Bankruptcy.

68. Defendant's reporting of the Account is patently false and therefore inaccurate.

69. If not patently false, Defendant's reporting of the Account is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

70. Upon information and belief, had Defendant accurately reported the Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

71. Defendant's reporting of an additional $4,089.00 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

72. The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

73. After Plaintiff's bankruptcy discharge, Plaintiff applied to rent an apartment at Ballantyne Apartments and was – denied, on or about February 8, 2022, due to the inaccurate reporting of the Account by Defendant.

74. Furthermore, after Plaintiff's Bankruptcy discharge, on or about March 2, 2022, Plaintiff applied to rent an apartment at MAA Oakbend and Plaintiff was denied this rental housing due to the inaccurate reporting of the Account by Defendant.

75. After Plaintiff's Bankruptcy discharge, Plaintiff applied for credit through Capital One and was denied due to the inaccurate reporting of the Account by Defendant.

76. After Plaintiff's Bankruptcy discharge, on or about October 29, 2021, Plaintiff also applied for a NetCredit loan through Even Financial and submitted to Republic Bank & Trust Company, was denied credit due to the inaccurate reporting of the Account by Defendant.

77. After the Plaintiff's Bankruptcy discharge, on or about October 29, 2021, Plaintiff once again applied for credit with SunUP Financial, LLC d/b/a BalanceCredit.com and was denied credit due to the inaccurate reporting of the Account by Defendant.

78. Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for a personal loan with Speedycash and was denied due to the inaccurate reporting of the Account by Defendant.

79. After Plaintiff's bankruptcy discharge, on or about October 29, 2021, Plaintiff applied for credit through Universal Credit and was denied due to the inaccurate reporting of the Account by Defendant.

80. Finally, to rebuild credit, after Plaintiff's bankruptcy discharge, Plaintiff applied for an Upgrade Card but was denied, on or about October 29, 2021, due to the inaccurate reporting of the Account by Defendant.

81. Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied to Capital One for a car loan and was approved by Capital One Auto Finance on or about November 1, 2021, at less favorable terms of interest and credit limit due to the inaccurate reporting of the Account by the Defendant.

82. After bankruptcy discharge, Plaintiff applied for a loan through Exeter Finance and was denied due to the inaccurate reporting of the Account by Defendant.

83. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Speedycash, Driversselect of South Dallas, Capital One, Ally Financial, Curo Management, LLC (on December 26 and again December 29, 2021), Pentagon FCU, Global Lending Services, Inc., First Investors Fin Services, Fort Worth Community CU by Defendant during the process of Plaintiff's credit applications.

84. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

85. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, loss of sleep, reputational damage, frustration, shock, embarrassment, violation of privacy, and anxiety.

## V.   COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

86. Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully set forth herein at length.

87. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

88. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

89. In this case, Defendant inaccurately reported debts related to accounts that Defendant knew were unsecured and predated Plaintiff's Chapter 13 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero-dollar balance.

90. Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported this information in Plaintiff's consumer reports.

91. When Defendant voluntarily procured and published Plaintiff's bankruptcy information, it had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

92. Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of Plaintiff's rights under the FCRA. Defendant knew or should have known of its/their obligations under the FCRA, especially those pertaining to reporting discharged unsecured debts with a zero-dollar balance.

93. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed case law and evidenced in prior cases involving Defendant from which Defendant is on notice of its/their unreasonable procedures concerning the reporting of Chapter 13 discharged unsecured debts.

94. Defendant knew or should have known that the effect of a discharge Order on unsecured debts in a Chapter 13 Bankruptcy is to discharge all statutorily dischargeable <u>unsecured debts</u> other than those that have been successfully challenged in an adversary proceeding.

95. Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

96. Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

97. Yet in this case, Defendant reported the Account, which was unsecured and predated Plaintiff's bankruptcy, with a balance owed after discharge, instead of a zero-dollar balance.

98. Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, date of filing and date of discharge.

99. Defendant is also on notice from other tradelines reported by Defendant that indicate Plaintiff's accounts were included in and discharged in bankruptcy.

100. Defendant received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

101. Defendant had prior notice of their unreasonable procedures for reporting discharged debt.

102. Defendant also possessed information from which Defendant should have known the information reported about Plaintiff was inaccurate, as Plaintiff's consumer report included:

the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate unsecured tradeline account/debt arose or was otherwise opened by the consumer.

103. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's consumer file/report.

104. Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

105. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

106. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

107. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

108. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

109. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

110. Defendant is the direct and proximate cause of Plaintiff's damages.

111. Defendant isa substantial factor in Plaintiff's damages.

112. Therefore, Defendant is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(d) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.   JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 1st day of September 2022.

**PRICE LAW GROUP, APC**

By: */s/Lisbeth Findsen*
Lisbeth Findsen,
(TX Bar No.: 24002679)
8245 N. 85th Way
Scottsdale, AZ 85258
P: (818) 600-5575
F: (818) 600-5415
E: beth@pricelawgroup.com

///

Sharon K. Campbell
(TX Bar No.: 03717600)
Local counsel for the **PRICE LAW GROUP, APC**
SHARON K. CAMPBELL, ATTORNEY AT LAW
3500 Oak Lawn Ave #110
Dallas, TX 75219
T: (214) 351-3260
E: scampbellinbox@gmail.com

*Attorneys for Plaintiff,*
*Edward Burnett*